UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MELISSA NICHOLAS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No. 14-cv-14117-ADB |
| vs. | * | |
| | * | |
| CIGNA LIFE INSURANCE COMPANY | * | |
| OF NEW YORK, | * | |
| | * | |
| Defendant. | | |

MEMORANDUM AND ORDER

February 25, 2016

BURROUGHS, D.J.

**I.   Introduction**

In this action brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), Melissa Nicholas ("Ms. Nicholas") challenges the decision of CIGNA Life Insurance Company of New York ("CLICNY") denying her benefits under the Pfizer Health and Welfare Long Term Disability Plan (the "LTD Plan"), administered and underwritten by CLICNY and sponsored by her former employer, Pfizer, Inc. ("Pfizer"). [ECF No. 1 ("Complt.")]. Ms. Nicholas has brought three causes of action against CLICNY. First, she seeks relief under 29 U.S.C. § 1132 to recover benefits due under the LTD Plan. Id. ¶¶ 54-59. Second, she contends that CLICNY breached a settlement agreement entered between state insurance regulators and several insurance companies under the control of CIGNA, Corp. Id. ¶¶ 60-64. Third, she seeks attorney's fees and costs under 29 U.S.C. § 1132 (g). Id. ¶¶ 65-66.

Currently before the Court are (1) Ms. Nicholas' Motion to Take Limited Focused Discovery [ECF No. 30], which requests that several interrogatories and document requests be

allowed, and (2) CLICNY's Motion for Judgment on the Pleadings and Motion to Strike Demand for Jury Trial, which seeks to dismiss the second count for breach of contract and to strike Ms. Nicholas' demand for a jury trial. [ECF No. 21]. For the reasons stated herein, Ms. Nicholas' Motion to Take Discovery is <u>GRANTED IN PART</u> and CLICNY's Motion for Judgment on the Pleadings and Motion to Strike Demand for Jury Trial is <u>GRANTED</u>.

## II. Background

### A. Procedural History

From September 1997 to March 2006, Ms. Nicholas worked at Pfizer, most recently as a European Financial Shares Services Quality Manager. [R. 156; R. 1051].[1] Ms. Nicholas' last day of work was March 27, 2006, after which she applied for long-term disability ("LTD") benefits under the LTD Plan. [R. 132-146; R. 1051]. In her original claim for benefits, Ms. Nicholas stated that she was unable to work because of severe chronic pain caused by bulging discs in her spine and psoriatic arthritis in her spine, sacrum, and hips. [R. 137].

By letter dated November 22, 2006, CLICNY denied Ms. Nicholas' claim for LTD benefits. [R. 1050-1053]. In April 2007, Ms. Nicholas appealed and after an additional review, CLICNY again denied her claim. [R. 1079-1081]. In December 2007, Ms. Nicholas again appealed and CLICNY declined to consider her second appeal. [R. 1173]. While this process was ongoing, Ms. Nicholas applied for benefits under the Social Security Act and in April 2007, the Social Security Administration issued a decision finding Ms. Nicholas disabled as of September 1, 2006. [R. 339-342].

---

[1] The administrative record consists of 3475 pages, which are numbered from 0 to 3475. [ECF No. 34]. References to pages in the record are cited in this opinion as "R. __."

In November 2009, through a new attorney, Ms. Nicholas sought an additional appeal of CLICNY's decision to deny her LTD benefits and CLICNY agreed to complete an appeal review. [R. 1186-1215; R. 2887]. By letter dated March 19, 2010, CLICNY issued a check to Ms. Nicholas in the amount of $127,870.80, which represented benefits due to her from September 28, 2006 to September 27, 2008 (the "Own Occupation" period under the LTD Plan). [R. 2894]. In a subsequent letter, CLICNY declined to provide LTD benefits beyond that point, finding that Ms. Nicholas was capable of performing light and sedentary occupations. [R. 2919-2921]. CLICNY subsequently considered two additional appeals and both times declined to extend benefits beyond the Own Occupation period. [R. 3237-3239; R. 3403-3406]. On November 2014, Ms. Nicholas filed her Complaint with this Court. [ECF No. 1].

### B. Regulatory Settlement Agreement

On May 13, 2013, the Life Insurance Company of North America, Connecticut General Life Insurance Company, CIGNA Health and Life Insurance, the Massachusetts Division of Insurance and other state insurance regulators entered into a Regulatory Settlement Agreement ("RSA"). [ECF No. 2]. The three companies that signed the RSA (collectively the "CIGNA Companies") are under the control of CIGNA, Corp. [ECF No. 1 ¶ 45]. The RSA arose from a series of examinations by state insurance regulators into the claim handling practices of the CIGNA Companies. [ECF No. 2 at 1-2]. Under the RSA, the CIGNA Companies agreed to institute a plan of corrective action, establish a remediation program to reevaluate certain LTD claims that were previously denied, and to pay fines. Id. at 3.

Ms. Nicholas' breach of contract claim relates to the RSA's remediation program. The RSA required the CIGNA Companies to remediate LTD claims made by residents of several states, including Massachusetts, which were denied or terminated from January 1, 2009 to

December 31, 2010. Id. at Ex. F. Ms. Nicholas alleges that CLICNY was bound by the RSA and breached it by failing to remediate her claim. [ECF No. 1 ¶ 63].

### III. Discussion

#### A. Motion to Take Discovery

First before the Court is Ms. Nicholas' Motion to Take Limited Focused Discovery [ECF No. 30], in which Ms. Nicholas requests that the Court allow five interrogatories and three document requests directed towards CLICNY. "ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator." Denmark v. Liberty Life Assur. Co. of Boston, 566 F.3d 1, 10 (1st Cir. 2009). Where, as here,[2] the benefit plan grants the claims administrator full discretionary authority, the administrator's denial of benefits is reviewed for abuse of discretion. McDonough v. Aetna Life Ins. Co., 783 F.3d 374, 379 (1st Cir. 2015). Accordingly, because the Court's review will be limited to adjudicating the reasonableness of the administrator's decision to deny benefits, "some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003). "It is almost inherent in the idea of reviewing agency or other administrative action for reasonableness; how could an administrator act unreasonably by ignoring information never presented to it?" Id.

Despite this, the First Circuit has recognized that narrowly tailored "conflict-oriented" discovery is sometimes permissible in an ERISA benefit-denial case. Denmark, 566 F.3d at 8-10.

---

[2] The LTD Plan provides that, "[T]he Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on participants and beneficiaries of the Plan to the full extent permitted by law." [R. 18].

In Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008), the Supreme Court recognized that where a plan administrator is responsible for both evaluating and paying benefit claims, there is a structural conflict of interest that reviewing courts may take into account. The Supreme Court held in Glenn that where such a conflict exists, the "reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." 554 U.S. at 108. Accordingly, in Denmark, the First Circuit found that limited discovery may be necessary to examine the significance of this factor and to determine "whether a structural conflict has morphed into an actual conflict." 566 F.3d at 9. The Denmark court noted that in future cases, given the Supreme Court's decision in Glenn, "plan administrators . . . can be expected as a matter of course to document the procedures used to prevent or mitigate the effect of structural conflicts." Id. Conflict-oriented discovery would therefore only be needed "to the extent that there are gaps in the administrative record." Id.; see also Wilson v. Pharmerica Corp. Long Term Disability Plan, 102 F. Supp. 3d 373, 375 (D. Mass. 2015) (ordering discovery where "Aetna failed to include documents relating to the procedures used to prevent or mitigate the effect of its structural conflict").

Here, CLICNY was responsible for both evaluating and paying Ms. Nicholas' LTD benefit claim. [ECF No. 31 at 1; R. 12]. Thus, the conflict of interest identified by the Supreme Court in Glenn is present. Because the record is devoid of any documentation demonstrating efforts CLICNY took to prevent or mitigate the effect of this structural conflict, discovery is allowed to fill gaps in the record.

CLICNY contends that even where a defendant is both the plan administrator and payor, conflict-oriented discovery is only permissible where plaintiff can demonstrate a "'colorable

claim of bias,' or in other words, that the denial of benefits was improperly influenced by the CLICNY's conflict of interest." [ECF No. 35 at 3]. CLICNY cites to several cases where discovery was not allowed because, despite the presence of a structural conflict of interest, plaintiff failed to make a showing that the conflict influenced the administrator's decision to deny benefits. See, e.g., Tracia v. Liberty Life Assur. Co. of Boston, No. CIV.A. 13-13248-JGD, 2014 WL 6485873, at *3 (D. Mass. Nov. 19, 2014) ("In order to be entitled to such discovery the plaintiff must make at least 'a threshold showing that the denial of benefits was improperly influenced by the administrator's conflict of interest.'" (quoting McGahey v. Harvard Univ. Flexible Benefits Plan, No. CIVA 08-10435-RGS, 2009 WL 799464, at *2 (D. Mass. Mar. 25, 2009) (denying motion for discovery and noting that "the court will not permit discovery where a plaintiff can point to nothing more than the existence of a structural conflict of interest"))). This line of cases does not compel the Court to deny Ms. Nicholas' Motion to Take Discovery. Where the joint plan administrator and payor has failed to document any procedures to mitigate the conflict, which was the case in Denmark as it is here, the plaintiff should be given a "limited opportunity to flesh out the record." Denmark, 566 F.3d at 9. The Court will not permit all of the discovery requested by Ms. Nicholas, but will allow limited discovery focused on determining whether the structural conflict has "morphed into an actual conflict." Id.

Ms. Nicholas requests that the Court permit five interrogatories and three document requests related to the conflict. She seeks information about the relationship between CLICNY, medical consultant MES Solutions, and Dr. Darrin Campo, who was hired through MES Solutions to evaluate Ms. Nicholas' claim in 2011. Interrogatories 1-3 ask about the number of and outcomes in CLICNY disability claims evaluated by Dr. Campo from 2011-2013; and interrogatories 4-5 ask about the number of and compensation received for CLICNY disability

claims involving MES Solutions from 2011-2013. Ms. Nicholas' three document requests seek: (1) documents showing CLICNY's procedures to prevent or mitigate the effect of structural conflicts; (2) CLICNY's policies and procedures relevant to the handling of Ms. Nicholas' claim; and (3) performance evaluations of Jessica Minyon, an Appeal Claim Manager who denied Ms. Nicholas' appeal, from 2011-2014.

In similar circumstances, courts in this district have allowed more and less extensive discovery than what Ms. Nicholas requests. In Semedo v. Boston Bldg. Serv. Emps. Trust Fund Long Term Disability Plan, for example, Judge Zobel granted plaintiff's requests for Aetna's internal guidelines, policies, procedures, and training materials, but declined her request for information relating to Aetna's relationship with its paid consultants and reviewers. No. 12–11697–RWZ, 2013 WL 3805130, at *2 (D. Mass. July 19, 2013); see also Beattie v. Prudential Ins. Co. of Am., No. CIV.A. 10-30207-KPN, 2011 WL 2413458, at *2 (D. Mass. June 8, 2011) (finding that plaintiff was entitled to "nothing more than Defendant's written policies and procedures, if any, which address (1) insulation of the claims review and evaluation process from financial considerations and (2) financial incentives offered to claims reviewers or others involved in the claim review process"). In Estrella v. Hartford Life and Accident Ins. Co., by contrast, Judge Zobel permitted depositions of the two MES Solutions doctors used by the defendant insurance company, as well as 30(b)(6) depositions of the defendant and MES Solutions. 271 F.R.D. 8, 9 (D. Mass. 2010). In Wilson v. Pharmerica Corp. Long Term Disability Plan, heavily relied upon by Ms. Nicholas, the court, largely consistent with what Ms. Nicholas has requested, ordered that defendant Aetna produce statistics regarding the compensation and past outcomes of the medical experts used, information regarding the compensation of MES Solutions, and documents showing Aetna's procedures for preventing or mitigating the effect of

structural conflicts. No. CIV.A. 14-12345-LTS, 2015 WL 1962812, at *2 (D. Mass. May 1, 2015).

In this case, the Court denies Ms. Nicholas' requested interrogatories 1-3, which concern the track record of Dr. Campo. CLICNY has stated that it does not keep track of past LTD claims by medical reviewer [ECF No. 35, Ex. 1 ¶ 3] and that it would need to manually review each claim file from 2011-2013 to obtain the information requested. [ECF No. 35, at 13]. The Court agrees that such burdensome discovery is not warranted, especially in light of Dr. Campo's certifying at the end of his medical report that he has "no direct or indirect financial incentive for a particular determination." [R. 1012]. Moreover, the Court will not permit Ms. Nicholas' document request targeted at CLICNY's general policy and procedures, since the administrative record already contains a substantial collection of such documents. [R. 2166-2497]. Last, the Court will not permit Ms. Nicholas' document request seeking performance evaluations for Jessica Minyon, since this falls beyond the "narrowly tailored" discovery permitted in an ERISA benefit-denial case. Denmark, 566 F.3d at 9 ("[A]ny such discovery must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed.").

Ms. Nicholas' remaining interrogatories and document requests provide a reasonable framework for the narrow discovery appropriate here. CLICNY is ordered to: (1) report the total compensation paid to MES Solutions in 2011 and explain CLICNY's basis for determining how much to compensate MES Solutions in 2011; (2) explain the basis or method for compensating Dr. Campo and explain what input, if any, CLICNY has into which doctors are selected by MES Solutions to evaluate CLICNY's LTD benefit claims; and (3) produce documents showing CLICNY's procedures, if any, to prevent or mitigate the effect of structural conflicts. Such

limited discovery will fill the existing gaps in the administrative record and help the Court to determine the significance of the conflict in this case. See Glenn, 554 U.S. at 108 ("We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case.").

### B. Motion for Judgment on the Pleadings and to Strike Demand for Jury Trial

Also before the Court is CLICNY's Motion for Judgment on the Pleadings and Motion to Strike Demand for Jury Trial, which seeks to dismiss Count II of the Complaint for breach of contract and to strike Ms. Nicholas' demand for a jury trial. In Count II, Ms. Nicholas alleges that CLICNY breached the RSA by failing to remediate her claim. [ECF No. 1 ¶ 63]. Under the RSA's remediation provision, CLICNY was required to reassess LTD claims made by residents of several states, including Massachusetts, which were denied or terminated from January 1, 2009 to December 31, 2010. [ECF No. 2 at 76]. Ms. Nicholas alleges that CLICNY should have, but did not, reassess her claim pursuant to this provision of the RSA. In its Motion for Judgment on the Pleadings, CLICNY contends that this breach of contract claim is preempted by ERISA and that, in any event, Ms. Nicholas lacks standing to bring a claim under the RSA.

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." Perez–Acevedo v. Rivero–Cubano, 520 F.3d 26, 29 (1st Cir. 2008). Therefore, to survive a motion for judgment on the pleadings, a plaintiff "must state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When reviewing a 12(c) motion, "the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's

9

behoof." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice. Id.; see also Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (in evaluating a Rule 12(c) motion, a court may "consider documents the authenticity of which are not disputed by the parties" as well as "documents central to the plaintiffs' claim" and "documents sufficiently referred to in the complaint"). Here, therefore, in addition to the Complaint, the Court may consider the RSA, which was attached to the Complaint and is central to Ms. Nicholas' breach of contract claim. [ECF No. 2].

The parties agree that Ms. Nicholas is not a party to the RSA. The RSA is an agreement between Life Insurance Company of North America, Connecticut General Life Insurance Company, CIGNA Health Insurance Company, the Massachusetts Division of Insurance and other state insurance regulators. [ECF No. 2 at 1].[3] Ms. Nicholas contends that she can nonetheless sue CLICNY for breach of the RSA. She claims that she is part of a limited class of persons—claimants entitled to remediation under the RSA—that are intended third party beneficiaries of the RSA and therefore may enforce its terms.

Under Pennsylvania law, "a non-party to a contract may bring a breach of contract claim if it is an intended third party beneficiary, *i.e.*, if the contract expresses both parties' intent to benefit it or 'the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties . . . .'" QVC, Inc. v. Resultly, LLC, No. CV 14-6714, 2016 WL 521197, at *3 (E.D. Pa. Feb. 10, 2016) (quoting Am. Stores Props., Inc. v.

---

[3] Ms. Nicholas alleges that CLICNY is bound by the RSA [ECF No. 1 ¶ 36], which the Court accepts as true for purposes of deciding the Motion for Judgment on the Pleadings.

Spotts, Stevens & McCoy, Inc., 651 F. Supp. 2d 349, 352-53 (E.D. Pa. 2009)).[4] When a contract with a governmental body is at issue, "the test for whether a member of the public is a third-party beneficiary is strictly applied." George v. Boise Cascade Corp./Office Max, No. 1:08-CV-02113, 2010 WL 4433113, at *6 (M.D. Pa. Nov. 1, 2010). "There must be some language in the contract evincing an intent that the party contracting with the government will be held liable to third parties in the event of a breach." A.D.E. Food Servs. Corp. v. City of Philadelphia, No. CIV. A. 95-7485, 1997 WL 631121, at *10 (E.D. Pa. Oct. 9, 1997). This standard applies even where "the third-party is a member of a small and specific sub-population that . . . benefits from the government contract more than the general public." Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan, 817 F. Supp. 2d 515, 532 (E.D. Pa. 2011).

There is no language in the RSA evincing an intent that the CIGNA Companies, or CLICNY, may be held liable to third parties in the event of a breach. Rather, the RSA sets forth a comprehensive monitoring and enforcement mechanism that includes specific remedies for noncompliance, including state-imposed fines and penalties, but does not include a private right of action by individual claimants. [ECF No. 2 at 8-9]. Accordingly, Ms. Nicholas is not a third party beneficiary of the RSA and may not bring a breach of contract suit to enforce its terms. It is true that there is no express language in the RSA stating that individuals like Ms. Nicholas may not act as third party beneficiaries. To bring suit as a third-party beneficiary of a government contract, however, a plaintiff must point to language affirmatively showing that the contracting parties intended to be held liable to third parties in the event of a breach. The RSA does not include any such language and instead contains a detailed remedial provision that disclaims any

---

[4] The RSA contains a Pennsylvania choice of law provision. [ECF No. 2 at 8 ("This Agreement shall be governed by and interpreted according to the laws of the Commonwealth of Pennsylvania, excluding its conflict of laws provisions.")].

intent to give individual claimants a right to enforce its terms. Count II of the Complaint is therefore dismissed.[5] In addition, as Ms. Nicholas concedes [ECF No. 25 at 1], because the only remaining claims arise under ERISA, her jury demand is stricken.

## IV. CONCLUSION

For the foregoing reasons, Ms. Nicholas' Motion to Take Discovery is <u>GRANTED IN PART</u> and CLICNY's Motion for Judgment on the Pleadings and Motion to Strike Demand for Jury Trial is <u>GRANTED</u>. The parties are directed to file a status report by March 9, 2016, which should include a proposed schedule for the case going forward as well as a description of Ms. Nicholas' proposed amendments to the complaint. They parties may also file a proposed protective order at that time.

**SO ORDERED.**

Dated: February 25, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT

---

[5] Because the Court holds that Ms. Nicholas is not a third party beneficiary to the RSA, and therefore does not have a remedy under the RSA, it need not consider whether ERISA preempts her breach of contract claim. ERISA preempts "any and all State laws insofar as they may . . . relate to any employee benefit plan," 29 U.S.C. § 1144(a). That being said, Ms. Nicholas asserts a narrow breach of contract claim that seemingly challenges CLICNY's failure to remediate her claim, and not CLICNY's failure to award her benefits. Therefore, resolution of this claim may not have required the Court to consult or apply the LTD Plan. <u>Cf.</u> <u>Goldberg v. Unum Life Ins. Co. of Am.</u>, 527 F. Supp. 2d 164, 170 (D. Me. 2007) (finding preemption where breach of contract claim challenged defendant's refusal to reinstate benefits following RSA-reassessment, because it would be "impossible to consider the breach without consulting and applying the terms of [the] original disability contract") (quotation marks omitted).